# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GLOTECH USA, INC.,** | **Civil Action No. 14-3321 (KM)** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **BLUEBIRD, INC.,** | |
| **Defendant.** | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff Glotech USA, Inc.
("Glotech" or "Plaintiff") for leave to amend its Complaint [Dkt. No. 71]. Defendant Bluebird, Inc.
("Bluebird" or "Defendant") opposes Plaintiff's motion [Dkt. No. 73]. For the reasons set forth
below, Plaintiff's motion to amend is **GRANTED in part and DENIED in part**.

## I.      BACKGROUND

Bluebird manufactures and sells "enterprise mobile devices." Dkt. No. 73 at p. 4. In 2009,
Bluebird and Glotech entered into a written agreement whereby Glotech would promote Bluebird's
products to potential customers in the United States ("the Commission Agreement"). Compl. at ¶
12. Pursuant to the Commission Agreement, Glotech's fee for the successful promotion of
Bluebird's products to new customers would be the difference in price between Bluebird's quoted
price for a product to Glotech and the actual price paid by the new customer for the product.
According to Defendant, Glotech would only be entitled to a fee under the Commission Agreement
if Glotech "secured the customer, established the communication network, and managed the
customer as a reseller where payment would go through Glotech." Dkt. No. 73 at p. 5. Plaintiff,
however, appears to contend that Glotech would earn a commission "if Bluebird entered into a sales

contract directly with a new client developed by Glotech, and sales occurred pursuant to that contract."[1] Dkt. No. 76 at p. 3.

According to Plaintiff, Glotech introduced Bluebird products to two customers, Invivodata and PHT, which are now two of the largest purchasers of Bluebird products. Plaintiff contends that in violation of the Commission Agreement, Bluebird failed to pay Glotech its commission on sales of Bluebird products to Invivodata and PHT. Based upon Bluebird's failure to pay the commission for PHT and Invivodata, to which Glotech believes it is entitled, Glotech filed its Complaint in this action, asserting claims for: (1) non-payment of commissions; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) intentional interference with prospective economic advantage. In response, Defendant claims that no commission is owed to Glotech for sales to PHT and Invivodata because after Glotech was "unable to close the deals," Bluebird directly negotiated a deal with Invivodata in October 2011 and with PHT in April 2011 "with much lower pricing terms than those which Glotech had originally proposed for PHT." Dkt. No. 73 at p. 5.

Plaintiff now seeks to amend to add two additional counts to its Complaint stating causes of action for: (1) unjust enrichment and; (2) quantum meruit. These additional counts, Plaintiff states, are pled in the alternative to Plaintiff's existing claims, and will allow Plaintiff to recover compensation purportedly owed to Glotech by Bluebird for services performed by Glotech under a quasi contract theory in the event that a determination is made that Glotech is not owed any compensation under the Commission Agreement. The basis for Plaintiff's two additional proposed causes of action is two-fold. First, Plaintiff claims that while Defendant initially took the position that prices for PHT and Invivodata were quoted directly from Bluebird to PHT and Invivodata and

---

[1] The Court notes that the Commission Agreement is not included in Plaintiff's initial Complaint or proposed Amended Complaint and that neither party has included the Commission Agreement in their briefing on the present motion.

that Glotech was never quoted prices for those customers, Defendant has shifted its litigation strategy and is now taking the position that Glotech was in fact quoted prices for PHT and Invivodata, but that the prices quoted to Glotech were higher than the actual sales price of Bluebird's products to those customers.

Second, during the pendency of this action, eResearch Technology, Inc. ("ERT") has become the successor company to both PHT and Invivodata. After last selling its products to ERT in 2015, Bluebird entered into a contract with ERT in August of 2016 for sales of a new Bluebird product (the "ERT Agreement"). The ERT Agreement has not yet been implemented and Bluebird has not yet made any sales under the ERT Agreement. Defendants claim that Glotech had no involvement in the ERT Agreement and that Glotech could not have been involved in negotiating the ERT Agreement because it included questions about new Bluebird products which Glotech would not have been equipped to address. Glotech claims to have learned of the ERT Agreement in October of 2016 "through its own investigation" and contends that because Glotech was initially responsible for introducing ERT, through PHT and Invivodata, to Bluebird products, Glotech is entitled to compensation for sales that have resulted from that introduction.

Finally, Plaintiff seeks to amend the first count of its Complaint to seek exemplary damages under New Jersey's Commission Protection Act (the "CPA"). In support of this amendment, Glotech claims that it "learned it had a right to seek exemplary damages as relief for its [non-payment of commission] count." Dkt. No. 71 at p. 15, n. 1. Plaintiff does not state what led to the discovery of its purported right to seek the proposed relief or why this relief was not sought in Plaintiff's initial Complaint.

## II.    DISCUSSION

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC,* 2011 WL 5170445, at *2 (W.D.Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo,* 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)). In situations such as the present, where a party seeks to amend "after the deadline for doing so set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15." *Id.* at *2; *see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd.,* 148 F. App'x 82, 85 (3d Cir. 2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).

The initial Pretrial Scheduling Order in this matter was entered on April 27, 2015, and set forth a deadline for moving to amend pleadings on September 30, 2015. *See* Dkt. No. 21 at ¶ 10(b). Plaintiff first sought the Court's leave to move to amend on February 17, 2016 [Dkt. No. 41], which the Court granted [Dkt. No. 43], and Plaintiff filed a motion to amend on February 25, 2016 [Dkt. No. 44]. The parties agreed to proceed to private mediation in an attempt to resolve this matter and the Court entered a stay of discovery and terminated Plaintiff's motion to amend pending the outcome of the parties' mediation. *See* Dkt. No. 52. Mediation was unsuccessful and Plaintiff filed a renewed motion to amend its Complaint on August 26, 2016. *See* Dkt. No. 55. While its motion to amend was pending, Plaintiff sought the Court's permission to add an additional amendment to its motion. *See* Dkt. No. 67. The Court granted Plaintiff's request to move to further amend its Complaint and terminated Plaintiff's then pending motion to allow Plaintiff to consolidate all of its

proposed amendments into a single motion. *See* Dkt. No. 70. Plaintiff filed its consolidated motion to amend on January 27, 2017, which is now pending before the Court [Dkt. No. 71]. Defendant, citing the January 27, 2017 filing date of Plaintiff's present motion to amend, asserts that Plaintiff's motion was filed sixteen months after the expiration of the deadline set forth the Pretrial Scheduling Order. However, while Plaintiff's presently pending motion was not filed until January 27, 2017, Plaintiff first moved to amend in February 17, 2016, and as a result of various delays, which are not attributable solely to Plaintiff, resolution of Plaintiff's request has been delayed until the present. Accordingly, in calculating the amount of time between the expiration of the deadline to move to amend and Plaintiff's motion to amend, the Court will utilize the original filing date of February 25, 2016, which results in a five month delay, rather than the sixteen month delay asserted by Defendant.

In light of Plaintiff's motion to amend being filed after the expiration of the September 30, 2015 deadline, the Court first determines whether Plaintiff has demonstrated "good cause" under Rule 16. Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 469 (D.N.J. Oct. 19, 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The requirement of a

deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); *see also Harrison,* 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired."). The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow its proposed amended pleading. *Prince v. Aiellos,* No. 09–5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting *Graham,* 271 F.R.D. at 118); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.,* 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting *Rent–A–Ctr. v. Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 104 (S.D.N.Y. Apr. 9, 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.' " *Chancellor v. Pottsgrove Sch. Dist.,* 501 F.Supp.2d 695, 702 (E.D.Pa. Aug.8, 2007); *see also* Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of*

*Stallings v. IBM Corp.,* Civ. No. 08–3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark,*, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. *See Dimensional Commc'n.,* 148 F. App'x at 85 (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

First, the Court addresses whether Plaintiff has demonstrated good cause for its failure to move to add a claim for exemplary damages to Count One of its Complaint within the September 30, 2015 deadline. In support of its proposed amendment, Plaintiff states that exemplary damages are already being sought it its remaining causes of action, that its proposed claim for damages would not be futile, and that when it "learned it had a right to seek exemplary damages as relief for [Count One] . . . [it] promptly sought leave to amend." Dkt. No. 71 at p. 15, n. 5. Plaintiff does not set forth any explanation for its failure to move to include the proposed damages claim prior to expiration of the September 30, 2015 nor does Plaintiff discuss when and how it "learned" it had a right to seek such damages. Based upon the inclusion of the request for damages which Plaintiff now seeks to assert in other causes of action in Plaintiff's initial Complaint, it appears that Plaintiff has long been aware of its purported right to seek these damages and Plaintiff has failed to explain what precluded the addition of the proposed claim for damages to its Complaint at an earlier date.

Accordingly, because Plaintiff has failed to set forth any justification for its failure to move to add the proposed damages claim before the September 30, 2015 deadline, the Court finds that Plaintiff has failed to demonstrate good cause under Rule 16 and Plaintiff's request to add a claim for exemplary damages to Count One is therefore **DENIED**.

Next, the Court addresses whether Plaintiff has demonstrated good cause for its failure to move to amend to add causes of action for unjust enrichment and quantum meruit within the September 30, 2015 deadline. Initially, the Court notes that the ERT Agreement was undisputedly entered into after the expiration of the September 30, 2015 deadline, and therefore Plaintiff has demonstrated good cause for not moving to amend to assert claims stemming from the ERT Agreement within the deadline. Next, Plaintiff claims that in response to Plaintiff's Interrogatories, Defendant took the position that no prices were quoted to Glotech for sales to PHT and Invivodata. According to Plaintiff, it discovered on January 26, 2016 that Defendant had changed its position to assert that Glotech had been quoted prices for these customers but that the price quoted to Glotech was higher than the price ultimately negotiated between Bluebird and PHT and Invivodata, thereby negating any commission which would have been owed to Glotech under the Commission Agreement. Based upon this discovery, Plaintiff requested permission to move to amend on February 17, 2016. In opposition, Defendant states that Plaintiff was previously aware of Defendant's position that the prices quoted to Glotech were ultimately higher than the actual prices negotiated, and that Defendant's position in this regard was specifically stated in a December 5, 2013 email from "the head of Bluebird's legal department." Dkt. No. 73 at p. 15. Plaintiff does not dispute that it received the email referenced by Defendant, but states that the email was written in Korean with no translation provided and did not alert Plaintiff to Defendant's position.

Beyond the December 5, 2013 email, Defendant cites to various discovery provided to Plaintiff regarding the prices ultimately paid by PHT and Invivodata and whether Glotech was authorized to act as a reseller with respect to those customers to assert that Plaintiff should have been aware of its position regarding the quoted prices. While Defendant's statements during discovery may have contained an implication that prices for PHT and Invivodata were provided to Glotech, Defendant's response to Plaintiff's Interrogatory No. 7, which is dated October 30, 2015, expressly states that "[f]or each of Bluebird's sales to PHT and Invivodata from June 10, 2009 to the present, prices were offered to PHT and Invivodata, not to Glotech." Dkt. No. 71, Ex. B. at p. 5. This unequivocal statement that prices for PHT and Invivodata were not provided to Glotech, which was produced to Plaintiff after the December 5, 2013 email and after the September 30, 2015 deadline for moving to amend, supports Plaintiff's position that it did not discover Defendant's contrary position until after the deadline for amendments had expired. Although Defendant cites to various discovery and statements which purportedly imply Defendant's position that Glotech was in fact quoted prices for PHT and Invivodata, Defendant has failed to identify any information provided to Plaintiff prior to the January 26, 2016 date cited by Plaintiff which would have clearly alerted Plaintiff to Defendant's position. Accordingly, because Plaintiff, despite the exercise of reasonable diligence, did not possess the requisite knowledge to move to add the presently proposed causes of action prior to the expiration of the September 30, 2015 deadline, the Court finds that Plaintiff has demonstrated good cause under Rule 16 for its failure to move within the deadline to include its two additional proposed claims.

Finding that Plaintiff has demonstrated "good cause" under Rule 16, the Court turns to Rule 15. Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave

when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, "[t]he Third Circuit has consistently emphasized the liberal approach to pleading embodied by Rule 15.*" Endo Pharma v. Mylan Techs Inc.*, 2013 U.S. Dist. LEXIS 32931, at *4 (D. Del. Mar. 11, 2013). The Court should only deny leave when these factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

Defendant does not assert that Plaintiff's motion results from any bad faith, but argues that Plaintiff has unduly delayed and that allowing the proposed amendments would be prejudicial to Defendant.[2] First, the Court turns to Defendant's claim of undue delay. A court may deny a motion to amend if the movant's delay in seeking the amendment is undue. *Foman,* 371 U.S. at 182. "The mere passage of time does not require that a motion to amend . . . be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001) (internal citation omitted). However, if the delay places an unwarranted burden on the court or on the opposing party, then denial based on delay is appropriate. *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). Defendant argues that Plaintiff "can offer no reasons why it did not amend sooner" Dkt. No. 73 at p. 19. However, as previously

---

[2] Defendant also argues that Plaintiff's proposed claim for exemplary damages is futile. However, as the Court has denied Plaintiff's request to add its exemplary damages claim under Rule 16, the Court need not address whether that claim is futile.

discussed, it appears to the Court that upon the discovery of the information which forms the basis of Plaintiff's present motion, Plaintiff exercised due diligence and promptly sought to amend. Accordingly, the Court finds that Plaintiff did not unduly delay in moving for the present amendment.

Next, the Court addresses Defendant's assertion of prejudice. "Prejudice," for purposes of determining whether to allow the proposed amendments, involves serious impairment of the non-movant's ability to present its case. *Harter v. GAF Corp.,* 150 F.R.D. 502, 509 (D.N.J. 1993). Incidental prejudice to the non-moving party is not a sufficient basis for denial of an amendment; prejudice becomes "undue" only when the non-moving party shows that it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered. *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of Virgin Islands, Inc.,* 663 F.2d 419, 426 (3d Cir. 1981); *see also DiLoreto v. Borough of Oaklyn,* 744 F.Supp. 610, 615 (D.N.J. 1990). Prejudice can also be caused in a number of different circumstances, such as when the amended pleading will "(1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." *Textron Fin.-New Jersey, Inc. v. Herring Land Grp., LLC,* No. 06–2585, 2009 U.S. Dist. LEXIS 19539, at *12–13, 2009 WL 690933 (D.N.J. Mar. 11, 2009) (citing *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004)). Similarly, prejudice may result when the amendment would force a party to change their litigation tactics or case theory. *Stallings v. IBM Corp.,* No. 08–3121, 2009 U.S. Dist. LEXIS 81963, at *49, 2009 WL 2905471 (D.N.J. Sept. 8, 2009) (citing *Kiser v. Gen. Elec. Corp.,* 831 F.2d 423, 428 (3d Cir. 1987)).

Defendant claims that it will be prejudiced by the addition of the two proposed causes of action because the new claims will require additional discovery which "will significantly delay the

resolution of this case." Dkt. No. 73 at p. 22. Defendant further argues that if it had been aware of Plaintiff's proposed claims from the beginning of this action, its "overall litigation strategy and approach to discovery likely would have been different." *Id.* at p. 20. In response, Plaintiff asserts that the claims it seeks to add for quantum meruit and unjust enrichment are pled in the alternative to its breach of contract claim and that the proposed claims are largely based on the same facts as its original claims and will therefore not require a substantial amount of new discovery.

While the need to conduct additional discovery can prejudice the non-moving party, the need for additional discovery due to amendment does not, without more, prejudice the non-moving party. *Dole v. Arco Chem. Co.,* 921 F.2d 484, 488 (3d Cir. 1990). Even when a proposed amended complaint adds substantive allegations against a defendant or adds new defendants, where such new defendants are related to the existing ones or where "[t]he evidence required to meet these new allegations is substantially similar to that which was originally required," prejudice does not exist. *Pegasus Int'l, Inc. v. Crescent Mfg. Co.,* No. 06–2943, 2007 WL 1030457, at *5 (E.D.Pa. Apr. 2, 2007) (quoting *Dole,* 921 F.2d at 488). Here, the Court agrees with Plaintiff that its proposed additional claims will largely overlap with its existing claims and therefore require only minimal additional discovery. Fact discovery is still ongoing in this matter and the additional discovery necessitated by Plaintiff's new claims will not require any extensive extensions of the discovery period. Accordingly, because Plaintiff's proposed additional claims will not require extensive additional discovery or significantly delay the resolution of this matter, the Court finds that Defendant has failed to demonstrate any undue prejudice caused by Plaintiff's proposed amendments.

Based on the foregoing, Plaintiff's motion to amend [Dkt. No. 71] is **GRANTED in part and DENIED in part.** Plaintiff's motion to amend is **GRANTED** as to Plaintiff's proposed

additional causes of action for unjust enrichment and quantum meruit and **DENIED** as to Plaintiff's proposed addition of a claim for exemplary damages under the CPA.

### III.    CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 16th day of August, 2017,

**ORDERED** that Plaintiff's motion for leave to file an Amended Complaint [Dkt. No. 71] is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff's motion to amend is **GRANTED** as to Plaintiff's proposed additional causes of action for unjust enrichment and quantum meruit; and it is further

**ORDERED** that Plaintiff's motion to amend is **DENIED** as to Plaintiff's proposed addition of a claim for exemplary damages under the CPA; and it is further

**ORDERED** that Plaintiff shall file and serve its Amended Complaint within **fourteen (14) days** from the date of this Order.

     s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**